IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,                3:11-CR-00026-BR

       Plaintiff,                         OPINION AND ORDER

v.

TOMMY LEE VASQUEZ,

       Defendant.

S. AMANDA MARSHALL
United States Attorney
RYAN W. BOUNDS
JOHNATHAN S. HAUB
Assistant United States Attorney
1000 S.W. Third Ave., Ste 600
Portland, OR 97204
(503) 727-1000

       Attorneys for Plaintiff

1 - OPINION AND ORDER

**STEVEN T. WAX**
Federal Public Defender
**C. RENEE MANES**
Assistant Federal Defender
101 S.W. Main Street
Suite 1700
Portland, OR  97201
(503) 326-2123

Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on the remainder of Defendant's Motion (#49) to Dismiss Indictment [in its entirety] for alleged prosecutorial misconduct.  On January 27, 2012, the Court heard oral argument on Defendant's Motion.  For the reasons that follow, the Court **DENIES** the remainder of this Motion.

## BACKGROUND

On November 21, 2010, approximately three weeks after Defendant Tommy Lee Vasquez arrived at Federal Correctional Institute (FCI) Sheridan, Defendant and another inmate, Theodore Vickers, engaged in a verbal altercation regarding the subject of "burpees" (a style of exercise) after which they were involved in a physical altercation in and outside of a television room lasting approximately one minute.

After the physical altercation ended, Bureau of Prisons (BOP) Corrections Officers J. Jensrud and M. Michaelson found Vickers shirtless and bleeding on the television-room floor.

Vickers was taken to the FCI Sheridan medical office and then transported to a local hospital and finally to Legacy Emmanuel Hospital in Portland where he underwent emergency surgery. Defendant was taken to the Secure Housing Unit (SHU).

On January 20, 2011, a grand jury charged Defendant with one count of Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. § 113(a)(6). On November 16, 2011, the government filed various Motions in Limine. On December 2, 2011, the Court heard oral argument on the government's Motions in Limine.

At the hearing on the government's Motions, Assistant United States Attorney Ryan Bounds advised the Court that the government intended to seek a Superseding Indictment to add a charge of Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3) based on a witness interview conducted the previous day, December 1, 2011, that revealed additional evidence related to the events that occurred during the altercation between Defendant and Vickers. Specifically, Mr. Bounds noted the witness's characterization of the altercation differed from that of Defendant in that the witness stated Defendant slammed Vickers to the ground rather than merely tossing him over Defendant's shoulder. Mr. Bounds asserted this information was sufficient to seek to charge Defendant with Assault with a Dangerous Weapon; *i.e.*, the concrete floor.

On December 6, 2011, a grand jury returned a Superseding

3 - OPINION AND ORDER

Indictment that charged Defendant with one count of Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3)(the new charge related to the floor as a "dangerous weapon") and one count of Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. § 113(a)(6)(a repeat of the original charge). On December 22, 2011, Defendant filed the instant Motion to Dismiss. On January 27, 2012, the Court heard oral argument on Defendant's Motion to Dismiss Indictment.

On February 8, 2012, the Court issued an Opinion and Order (#75) in which it granted Defendant's Motion to Dismiss Count 1 of the Superseding Indictment as a matter of law. Also on February 8, 2012, the Court issued a summary Order in which it denied Defendant's Motion to Dismiss the Superseding Indictment in its entirety for alleged prosecutorial misconduct and advised the parties that the Court would issue this Opinion and Order in due course.

## DISCUSSION

As noted, Defendant moves to dismiss the Superseding Indictment in its entirety on the grounds of prosecutorial misconduct and/or vindictive prosecution.

I.  **Prosecutorial Misconduct**

   A.  **Standards**

   "Dismissal of [an] indictment is appropriate only 'if

4 - OPINION AND ORDER

it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)(quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986). To find such egregious misconduct, the court must conclude the government "significantly infringe[d]" on the grand jury's ability to render independent judgment. *Panther v. Hames*, 991 F.2d 576, 582 (9th Cir. 1993)(citing *United States v. Larrazolo*, 869 F.2d 1354,1357 (9th Cir. 1989)). To rise to constitutional error the defendant must show "the structural protections of the grand jury [were] so compromised as to render the proceedings fundamentally unfair," thereby allowing a "presumption of prejudice" to the defendant, or there is "a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding," or "the independence of the grand jury is substantially infringed." *Panther*, 991 F.2d at 582 (quoting *Bank of Nova Scotia*, 487 U.S. at 256-57). Dismissal of an indictment based on a misconduct claim is considered a "drastic step" and is "generally disfavored as a remedy." *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000)(citations and quotations omitted).

Mere misstatements by witnesses or prosecutors, even if material, do not meet the standard for dismissal. *See United*

5 - OPINION AND ORDER

*States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000). To prevail, a defendant must prove actual government knowledge of perjury. *Id.* (citing *United States v. Basurto*, 497 F.2d 781, 785-87 (9th Cir. 1974)). To prove government complicity in false testimony, a defendant must show "(1) the testimony (or evidence) was false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886-889 (9th Cir. 2003).

**B.    Analysis**

Defendant strongly emphasizes it is significant that the first grand jury was not shown the video of the events in question recorded by video cameras at FCI Sheridan. Instead Special Agent John Hallock was asked at that grand-jury proceeding to characterize how the physical altercation between Defendant and Vickers began. Special Agent Hallock testified:

> A:   He [Vasquez] was the aggressor in the fight. That indicates in the - when you watch the video that he is definitely the aggressor. I mean, the fight was invited, but he aggresses and takes on the fight.
>
> Q.   And so is it your understanding that even though Mr. Vasquez threw the first punch, Mr. Vickers was the initial sort of actor in this altercation?
>
> A.   That's correct. When I interviewed [T.V.] he made a comment, something to the effect that I said to him, fuck you, chump, come on up, let's take care of business.

6 - OPINION AND ORDER

Def.'s Mem. of Law in Support of Mot. to Dismiss, Ex. 50-52 at 7. In the second grand-jury proceeding, however, the grand jury was shown the video, and Agent Hallock then testified as follows when asked about the beginning of the physical altercation:

> Q.   Okay. And what was [T.V.'s] story, to the best of your recollection, as to what led to this physical fight?
>
> A.   It was the issue over burpees, as I explained. And the same ideology with [T.V.] being a white boy, that he would be labeled a chump as well if he did not at least confront him in one way or another. [T.V.] said that he wanted to just go ahead and take care of this, work this issue out, and that would have been the end of it.
>
> Q.   Work it out how?
>
> A:   Maybe by verbally talking to him and get this thing taken care of.

Gov't Resp., Ex. 1 at 12.

According to Defendant, this is evidence of prosecutorial misconduct because

> the first grand jury was truthfully informed that [Vickers] was the verbal aggressor and issued the challenge to fight but was never shown the video and was falsely informed that the video definitively showed [Defendant] as the physical aggressor. The second grand jury was shown the video with the Government's theory, but was not informed that [Vickers] was the verbal aggressor who issued the challenge to fight and was falsely informed that [Vicker's] motivation on going to the Hispanic T.V. room was only to try and talk with [Defendant]. This contradictory sworn testimony was given by the same agent elicited by the same prosecutor. Neither grand jury heard a truthful statement of the incident, which is that [Vickers] was the verbal aggressor who invited the

7 - OPINION AND ORDER

>fight, and the video evidence of who throws the first physical blow is, at best, unclear.

Supplement to Mot. to Dismiss Indictment at 405.

The Court notes the government commenced the first grand-jury proceeding within 60 days of the incident and without an extensive investigation of the altercation due to a variety of factors. Moreover, the record reflects the government convened the second-grand jury proceeding only after conducting further investigation and obtaining a statement from an inmate witness that it was unable to obtain any earlier. On this record, Defendant has not established the government's decision to seek the Superseding Indictment based on the theory that the concrete floor was a "dangerous weapon" amounts to any form of prosecutorial misconduct or that the government's actions substantially infringed the independence of the grand jury.

In addition, to the extent that Defendant contends the government engaged in misconduct because the government did not advise the second grand jury that Vickers might have instigated the altercation by being the verbal aggressor or that Vickers might have thrown the first punch, the Ninth Circuit has made clear that the government does not have any obligation to disclose "substantial exculpatory evidence" to a grand jury. *Unites States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011) (quoting *United States v. Navarro*, 608 F.3d 529, 537 (9th Cir. 2010)). The government, therefore, is not under any obligation

8 - OPINION AND ORDER

to present evidence of an affirmative defense to a grand jury. *See, e.g., United States v. Gardner*, 860 F.2d 1391, 1395 (7th Cir. 1988) (indictment was not defective when the government did not present evidence that amounted to an affirmative defense to the grand jury); *United States v. Stevens*, 771 F. Supp. 2d 556, 566-67 (D. Md. 2011)("The government is not required to present exculpatory information to the grand jury, *United States v. Williams*, 504 U.S. 36 (1992), nor is it required to anticipate and present all of a defendant's affirmative defenses to the grand jury.").

On this record the Court concludes Defendant has not established prosecutorial misconduct by Mr. Bounds or any other prosecutor. Accordingly, the Court declines to grant Defendant's Motion to Dismiss on the ground of prosecutorial misconduct.

## II. Vindictive Prosecution

Defendant also moves to dismiss the Superseding Indictment on the ground of vindictive prosecution. Specifically, Defendant contends the government, and Mr. Bounds in particular, sought the Superseding Indictment to punish Defendant for choosing to reject a plea offer and to take this matter to trial.

### A. Standards

"A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Hernandez-*

9 - OPINION AND ORDER

*Herrera*, 273 F.3d 1213, 1217 (9th Cir. 2001). To establish a *prima facie* case of prosecutorial vindictiveness, a defendant "must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *United States v. Lopez*, 474 F.3d 1208, 1211 (9th Cir. 2007)(quoting *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995)). The defendant must establish a "realistic or reasonable likelihood" that the government would not have brought the additional charge "but for hostility or a punitive animus towards the defendant because he exercised his specific legal rights." *United States v. Jenkins*, 504 F.3d 694, 700 (9th Cir. 2007)(quoting *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982)).

### B. Analysis

As noted, the government advised the Court at the December 2, 2011, hearing that the Superseding Indictment was occasioned by new information obtained from a previously unavailable witness. Specifically, the witness stated he looked in the television room as Defendant and Vickers fought and saw

> [Defendant] had one of his hands around [Vickers's] neck, and his other arm under [Vickers's] crotch . . . . [Defendant] picked [Vickers] up approximately two feet off of the ground, and threw [Vickers] to the ground, and face planted [Vickers] into the floor.

Gov't Resp., Ex. 4 at 3. Mr. Bounds asserted at the time that this information differed significantly from Defendant's account

of the altercation in which Defendant stated he threw Vickers over his shoulder.

According to Defendant, the witness did not add any new facts, but rather provided, at best, an alternative theory for how Defendant caused Vickers's head to hit the floor. The Court disagrees. Although the Court has since concluded the floor does not constitute a dangerous weapon under the facts of this case, there was not at the time any existing case that specially so held in the Ninth Circuit. In any event, the Court finds a significant difference in character between the accounts of the event by Defendant and the witness. Clearly Defendant's account suggests a less deliberate and more accidental theory for how he caused Vickers's head to hit the floor whereas, in the light most favorable to the government, the witness's account suggests Defendant's conduct went well beyond "self defense" in mutual combat to the point of deliberately body-slamming Vickers head-first into the floor. The Court concludes this difference explains convincingly that the government's decision to seek more severe charges against Defendant was not vindictive.

Accordingly, on this record the Court concludes Defendant has not established a "realistic or reasonable likelihood" that the government would not have brought the additional charge "but for hostility or a punitive animus towards the defendant because he exercised his specific legal rights."

11 - OPINION AND ORDER

The Court, therefore, denies Defendant's Motion to Dismiss on the ground of vindictive prosecution.

In summary, the Court denies Defendant's Motion to Dismiss Indictment to the extent that Defendant moves to dismiss the Superseding Indictment in its entirety on the grounds of prosecutorial misconduct or vindictive prosecution.

## CONCLUSION

For these reasons, the Court **DENIES** the remainder of Defendant's Motion (#49) to Dismiss Indictment [in its entirety] for alleged prosecutorial misconduct.

IT IS SO ORDERED.

DATED this 15th day of February, 2012.

_____
ANNA J. BROWN
United States District Judge

12 - OPINION AND ORDER